UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| E.W.D.G., *a minor, by way of his mother,* | ) | |
| *Rachel A. Garcia,* | ) | |
| Plaintiff, | ) | |
| | ) | 1:12-cv-01782-JMS-MJD |
| *vs.* | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| *Acting   Commissioner of the* | ) | |
| *Social Security Administration,* | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff E.W.D.G., a minor, by way of his mother, Rachel A. Garcia, applied for Supplemental Security Income from the Social Security Administration ("SSA") on May 26, 2009. After a series of administrative proceedings and appeals, including a hearing in June 2011 before Administrative Law Judge ("ALJ") William Manico, the ALJ issued a finding that E.W.D.G. was not entitled to Supplemental Security Income.  In October 2012, the Appeals Council denied Ms. Garcia's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner") for the purposes of judicial review.  20 C.F.R. § 404.981.  Ms. Garcia then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

**I.**
**RELEVANT FACTUAL BACKGROUND**

E.W.D.G. was born to Ms. Garcia on November 9, 2002.  [R. 102; dkt. 12-5 at 2.]  On May 26, 2009, Ms. Garcia filed an application for Supplemental Security Income on behalf of E.W.D.G., alleging that he was disabled due to behavioral and psychological issues stemming from attention deficit hyperactivity disorder ("ADHD") and "possible depression," with an onset

date of March 1, 2007; Ms. Garcia also listed asthma as an additional disabling illness/condition. [R. 11, 116; dkts. 12-2 at 12, 12-6 at 13.]

### A.  Relevant Medical Evidence

On August 7, 2009, consulting physician Dr. Howard Wooden examined E.W.D.G. and diagnosed him with "[a]ttention deficit hyperactivity disorder, poorly controlled with current medication regimen."  [R. 199; dkt. 12-7 at 9.]  Dr. Wooden also assigned E.W.D.G. a Global Assessment of Functioning ("GAF") score of 70.  [R. 200; dkt. 12-7 at 10.]  Although Dr. Wooden did note "some moderate attention span difficulties," he concluded that E.W.D.G. possessed "at least [a]verage intellectual skills."  [R. 199; dkt. 12-7 at 9.]

E.W.D.G. was further examined on August 22, 2009, by consulting physician Dr. Sandeep Gupta.  [R. 234; dkt. 12-7 at 44.]  Dr. Gupta diagnosed E.W.D.G. with asthma, possible depression, and ADHD.  [R. 235; dkt. 12-7 at 45.]  Although Dr. Gupta diagnosed E.W.D.G. with asthma, the examination revealed no signs of active disease or respiratory distress.  [*Id.*] Dr. Gupta also reported no issues following a physical examination of E.W.D.G.  [*Id.*]

Treatment records from an examination in October 2009 performed by E.W.D.G.'s primary care physician, Dr. Gail Stotsky, indicated that E.W.D.G. was on honor roll at school, and that he was in good physical health.  [R. 317, 319; dkt. 12-9 at 5, 7.]  Dr. Stotsky noted that E.W.D.G. was "scoring 'a year ahead' on standardized tests."  [R. 317; dkt. 12-9 at 5.]  Dr. Stotsky further noted that E.W.D.G. was "interacting well with family/relatives and interacting well with peers/friends."  [*Id.*]  For the neurological portion of E.W.D.G.'s physical examination, Dr. Stotsky noted "Alert, Oriented, Normal sensory, Normal motor function, No focal defects…." [R. 319; dkt. 12-9 at 7.]  Additionally, for the psychological portion of the examination, Dr. Stotsky noted "Cooperative, Appropriate mood [and] affect, Normal judgment."  [*Id.*]

- 2 -

In November 2009, state agency physician Dr. Joseph Gaddy prepared a Childhood Disability Evaluation Form ("Disability Form"), listing E.W.D.G.'s impairments as ADHD and asthma.  [R. 237-238; dkt. 12-7 at 47-48.]  Dr. Gaddy concluded that E.W.D.G. had no limitations in the domains of acquiring and using information; interacting and relating with others; moving about and manipulating objects; or caring for himself.  [R. 239-40; dkt. 12-7 at 49-50.] Dr. Gaddy also assigned less than marked limitations in the domains of attending and completing tasks; and health and physical well-being.  [*Id.*]

In March 2010, state agency physician Dr. Steven Roush and state agency psychologist B. Randal Horton prepared a Disability Form for E.W.D.G., listing his impairments as pervasive developmental disorder, separation anxiety disorder, and anxiety disorder.  [R. 248; dkt. 12-8 at 2.]  Drs. Roush and Horton ruled out any autistic or depressive disorder.  [*Id.*]  They opined that E.W.D.G. had less than marked limitations in the domains of attending and completing tasks; caring for himself; and health and physical well-being.  [R. 250-251; dkt. 12-8 at 4-5.]  Drs. Roush and Horton further opined that E.W.D.G. had no limitations in the domains of acquiring and using information; or moving about and manipulating objects.  [*Id.*]  However, E.W.D.G. was assigned a marked limitation in the domain of interacting and relating with others and Drs. Roush and Horton noted that E.W.D.G. "is well behaved on medications and tends to act out when confronted with something new or overwhelming."  [*Id.*]  Drs. Roush and Horton concluded that E.W.D.G. was not disabled.  [R. 47; dkt. 12-3 at 3.]

An examination performed by Dr. Stotsky in June 2010 indicated that E.W.D.G. had a "good" general health status, and also that he had made the honor roll for the entire year.  [R. 321; dkt. 12-9 at 9.]  As before, E.W.D.G. was calm, cooperative, attentive, and his mood was appropriate.  [R. 323; dkt. 12-9 at 11.]  A follow-up examination performed by Dr. Stotsky in

October 2010 showed that E.W.D.G. was making friends and getting good grades (with the exception of spelling), and Dr. Stotsky even noted that he was behaving in ways that she had not "seen in him before, which is wonderful to see." [R. 325; dkt. 12-9 at 13.]

On April 19, 2011, E.W.D.G. was admitted to Riley Hospital and subsequently diagnosed with depression, pervasive developmental disorder, and attention deficit disorder. [R. 361; dkt. 12-9 at 49.] Additionally, he was assigned a GAF score of 40. [*Id.*] The reason for his admission was because he had allegedly threatened suicide. [*Id.*] The initial physical examination revealed nothing abnormal. [R. 362; dkt. 12-9 at 50.] E.W.D.G. was given a prescription to treat his behavioral outbursts and irritability. [R. 363; dkt. 12-9 at 51.] He underwent a mental examination at the time of his discharge on April 25, 2011, which revealed that "[h]e was alert and grossly oriented to person." [*Id.*] The examiner noted that he was "quite interested and wanted to engage with others." [*Id.*] Additionally, "[t]here were no other signs of abnormal motor behavior, and no oddities of speech were evident." [*Id.*] The examiner further acknowledged that E.W.D.G. was cooperative, judgment and impulse control had improved since admission, his thought process was "concrete," and he exhibited a level of intellectual function "in the average range with ability to function with his age level academically…." [*Id.*]

**B. Ms. Garcia's Testimony**

Ms. Garcia testified at a June 14, 2011 hearing in front of the ALJ that E.W.D.G. has problems interacting with other people, including children. [R. 36; dkt. 12-2 at 37.] She testified that he "kind of goes into his own place, withdraws." [*Id.*] Alternatively, Ms. Garcia stated that he will get "overwhelmed," resulting in "meltdowns [and] temper tantrums." [R. 36-37; dkt. 12-2 at 37-38.] She testified that this results in self-destructive behavior, such as hitting or attempt-

- 4 -

ing to harm himself.  [R. 37; dkt. 12-2 at 38.]  Ms. Garcia testified that E.W.D.G. exhibits these types of behaviors "[t]hree-four-five times a week, day."  [*Id.*]

Ms. Garcia also testified that E.W.D.G. has a conduct disorder, resulting in episodes of excessive hostility and aggression.  [*Id.*]  Ms. Garcia stated that during such instances, there are times when she cannot bring her youngest child into the home, because E.W.D.G. will attempt to harm the child.  [R. 38; dkt. 12-2 at 39.] She indicated that E.W.D.G. will strike her and her cousin.  [*Id.*]

Ms. Garcia testified that E.W.D.G. has problems with his memory, concentration, and communication with other people.  [R. 39; dkt. 12-2 at 40.]  She further testified that he also suffers from encopresis.  [R. 40; dkt. 12-2 at 41.]  Ms. Garcia stated that E.W.D.G. has bowel movements in his pants "sometimes once a week, sometimes every other week."  [*Id.*]  She also testified that E.W.D.G. has asthma, for which he takes steroid medications.  [R. 42; dkt. 12-2 at 43.]  She further testified that he has been on the steroid medications "his whole life."  [R. 43; dkt. 12-2 at 44.]  She also stated that E.W.D.G. is on medication which helps his "hyper behavior."  [R. 42; dkt. 12-2 at 43.]

Lastly, Ms. Garcia testified that E.W.D.G. had expressed a desire to go back to Riley Hospital, because "it's safe, it's controlled…he's always liked more controlled situations."  [R. 43; dkt. 12-2 at 44 (referring to R. 361; dkt. 12-9 at 49).]  She further testified that her home is not controlled, and that it is "unpredictable" due to the fact that her cousin and other children live there.  [R. 43; dkt. 12-2 at 44.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and [that] substantial evidence supports the ALJ's findings.  *Barnett v. Barnhart*, 381

F.3d 664, 668 (7th Cir. 2004) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted). Furthermore, because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Moreover, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (alteration in original).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits.  Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

For a child to be considered disabled under the Act, he must show that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has established a three-step evaluation process for determining disability for children:

Step One:     If a child is engaged in substantial gainful activity, he is not disabled, re-
gardless of the medical findings.  20 C.F.R. § 416.924(b).

Step Two:     If a child's impairments are not severe, i.e. they do not significantly limit
his ability to perform basic work activities, he is not disabled.  20 C.F.R. §
416.924(c).

Step Three:   If a child's impairments meet, medically equal, or functionally equal an
impairment described in the children's Listings, he is disabled.  20 C.F.R.
Pt. 404, Subpt. P, App 1.

A child's impairment or combination of impairments can qualify as a listed condition

("Listing") in one of three ways: (1) by *meeting* all of the criteria for the Listing, 20 C.F.R. §

416.925(c)(3); (2) by *medically equaling* the criteria, 20 C.F.R. § 416.925(c)(5); or (3) by *func-

tionally equaling* the criteria, 20 C.F.R. § 416.926a(a).  A child's impairment or combination of

impairments meets a Listing only if all of the Listing's criteria are satisfied.  20 C.F.R. §

416.925(c)(3),(d).  A child's impairment or combination of impairments medically equals a List-

ing when its severity and duration are at least equal to the Listing's criteria.  20 C.F.R. §

416.926(a).  Medical equivalence is found where: (1) the child has a listed impairment lacking in

one or more of the criteria, but other findings related to the impairment are of at least equal med-

ical significance to the Listing's criteria; or (2) the child's impairment is not a Listing, but find-

ings related to the impairment are of at least equal medical significance to the criteria for a close-

ly analogous Listing.  20 C.F.R. § 416.926(b)(2).

If a child's impairment or combination of impairments does not meet or medically equal

a Listing, the ALJ assesses the functional limitations caused by the child's impairment or combi-

nation of impairments to determine whether functional equivalence exists.  20 C.F.R. §

416.926a(a).  There are six (6) broad areas of functioning or "domains" used to determine func-

tional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

- 7 -

yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Generally, a child establishes functional equivalence to a Listing by showing "marked limitations in two domains, or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  If a child does not have marked limitations in at least two domains, or extreme limitations in one domain, he is not disabled.  20 C.F.R. § 416.924(d)(2).

### III.
#### DISCUSSION

Ms. Garcia advances four arguments as to why she believes the ALJ committed reversible error in determining that E.W.D.G. was not disabled.  [Dkt. 17 at 19-27].  Ms. Garcia claims that: (1) the ALJ erred in finding that E.W.D.G.'s impairments did not meet or medically equal a Listing; (2) substantial evidence does not support the ALJ's finding that E.W.D.G.'s impairments did not functionally equal a Listing; (3) the ALJ erred by not summoning a medical expert to testify on the issue of medical equivalence; and (4) the ALJ's credibility determination was patently erroneous.  *Id.*  The Court will consider each claim in turn.

#### A.  E.W.D.G.'s Impairments Did Not Meet or Medically Equal a Listing

Ms. Garcia first argues that "the ALJ erroneously failed to make any Step 3 determination regarding whether the claimant's combined impairments met or medically equaled any particular [Listing]."  [Dkt. 17 at 19.]  Specifically, she claims that E.W.D.G's combined impairments met or medically equaled Listings 112.06 (anxiety disorders), 112.08 (personality disorders), 112.11 (ADHD), 112.04 (mood disorders), and 112.10 (autistic or other pervasive developmental disorders).  [*Id.*]

However, rather than bolstering her contentions with substantive evidence and cogent argument, Ms. Garcia instead relies on the conclusory assertion that "[t]he claimant and his mother met their burden of proof by offering to the ALJ substantial medical-psychological examination

and treatment evidence proving that his combined impairments were relevant to and probably met or equaled several Listed impairments." [*Id.*]  Indeed, the only semblance of an intelligible basis for raising such a challenge is Ms. Garcia's fleeting observation that between 2008 and 2011 E.W.D.G. received GAF scores of 50 and below, which she declares were indicative of total disability.  [*Id.*]

Fatal to Ms. Garcia's argument is her failure to demonstrate exactly how her citations to various diagnoses and GAF scores contained in the record substantiate her claim that E.W.D.G.'s combined impairments met or medically equaled any of the Listings she has cited.  It is undisputed that a claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  Moreover, the regulations plainly state that an impairment cannot meet a Listing based solely on a diagnosis; there must be a "medically determinable impairment(s) that satisfies all of the criteria of the listing."  20 C.F.R. § 416.925(d).  Aside from obscure GAF scores, a string of citations to various diagnoses is all Ms. Garcia has provided.

Ms. Garcia's complete lack of analysis precludes her from meeting her burden.  She does not reference a single criterion of even one of the five Listings E.W.D.G.'s impairments purportedly met or medically equaled.  Equally lacking is any direction to specific record evidence to support application of any Listing.  As it has done before in other cases, the Court finds that undeveloped arguments are waived.  *See Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted); *Johnson v. Astrue*, 2010 WL 1190123, at *6 (S.D. Ind. 2010)

(claimant waived argument where she merely provided a "string of block quotes from medical records…devoid of any legal analysis").

Even if Ms. Garcia's arguments are not waived, they lack merit.  Ms. Garcia argues that "[t]he ALJ refused to consider any particular Listing," thereby rendering his decision "incomplete, contrary to the evidence, and erroneous as a matter of law…."  [Dkt. 17 at 19.]  The ALJ's determination on the issue of whether E.W.D.G.'s impairments met or medically equaled a Listing is set forth in section four of his discussion:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).  According to the state agency psychologist, Dr. Randal-Horton [sic] and the state agency physician Dr. Roush, claimant's impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings.

[R. 14-15; dkt. 12-2 at 15-16.][1]  Viewed in isolation, the ALJ's determination appears to dispose of the issue in a rather cursory manner.  However, notwithstanding the fact that the ALJ discussed functional equivalence in section five, he also extensively discussed the evidence pertinent to his determination that E.W.D.G.'s impairments did not meet or medically equal a Listing. [R. 15-28; dkt. 12-2 at 16-29.]  The fact that the ALJ did not replicate all of the relevant information from section five into section four is merely technical and does not make it any less germane to his determination.  To find otherwise would require the Court to read each section of the discussion with blinders on, which it declines to do.

However, it is well established in the Seventh Circuit that an ALJ should "mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand."  *Ribaudo,* 458 F.3d at 583 (quoting *Barnett*, 381 F.3d at 668).  Be-

---

[1] *See* R. 47, 248; dkts. 12-3 at 3, 12-8 at 2-7 (opinions of Drs. Horton and Roush).

cause the ALJ did not specifically mention any one Listing in determining that E.W.D.G.'s impairments did not meet or medically equal any Listing, the question before this Court is whether the ALJ conducted a mere perfunctory analysis in reaching his conclusion.

Social Security Ruling ("SSR") 96-6p provides that the ALJ "is responsible for deciding the ultimate legal question of whether a listing is met or equaled." 1996 SSR LEXIS 3, *7-8. However, SSR 96-6p further states that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id.*; *see also* 20 C.F.R. § 404.1526(c) (noting that an ALJ considers "the opinion given by one or more medical or psychological consultants designated by the Commissioner" when determining medical equivalency).

In *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004), the Court was faced with a similar challenge that the ALJ did not satisfy her duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Id.* at 700. In that case, the ALJ relied on the reports submitted by two state agency physicians in determining that the claimant was not disabled. *Id.* The Court rejected the claimant's argument, relying on the closely analogous case of *Steward v. Bowen*, 858 F.2d 1295 (7th Cir.1988). In *Steward,* the Court held:

> In the present case, Steward did not present any substantial evidence to contradict the agency's position on the issue of medical equivalency. The opinions of Steward's treating physicians simply did not address this question. Thus, the ALJ did not reject specific evidence supporting Steward's position that her impairments meet or equal a listed impairment in favor of the contrary opinions of the Secretary's consulting physicians. It was therefore unnecessary for the ALJ to specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency.

*Id.* at 1299. As did the Court in *Scheck*, this Court also finds the guidance of *Steward* apposite to the issue before it.

- 11 -

In considering E.W.D.G.'s limitations, the ALJ cited assessments from the medical professionals who examined E.W.D.G. between April 2007 and April 2011.  [R. 16-28; dkt. 12-2 at 17-29.]  After reviewing all of the pertinent medical evidence, the ALJ assigned "significant weight" to the opinions of Dr. Roush and Dr. Horton.  [R. 21; dkt. 12-2 at 22.]  Significantly, neither doctor opined that E.W.D.G.'s limitations met or medically equaled any Listing.  [R. 47, 248; dkts. 12-3 at 3, 12-8 at 2.]  The ALJ concluded that "[t]he objective medical evidence fully supported their diagnoses relating to Claimant's mental and physical abilities, and satisfies the undersigned's conclusion as to Claimant's lack of disability."  [R. 21; dkt. 12-2 at 22.]

While the ALJ did not list every shred of evidence he considered in forming his determination, he was also not required to do so.  An ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson*, 999 F.2d at 181.  Nevertheless, the ALJ did explicitly reference a number of factors that influenced his determination, as well as the evidence upon which it was based.

The Court finds that the significant weight the ALJ assigned to the opinions of Drs. Roush and Horton, as well as his ultimate determination that E.W.D.G.'s impairments did not meet or medically equal any Listing, were supported by substantial evidence contained in the record.  The ALJ considered the record as a whole and properly weighed all of the evidence before him.  Moreover, E.W.D.G.'s treating physicians did not address the issue of medical equivalence, nor does the record contain any evidence that would lead a reasonable person to question the findings of the state agency physicians.  Accordingly, although the ALJ's discussion contained no reference to any specific Listing, his analysis was not perfunctory, and thus must not be disturbed.

To the extent that Ms. Garcia cites *Ribaudo* for the proposition that an ALJ's failure to specifically reference a Listing in making his determination, without more, requires the Court to remand, her interpretation is flawed. [Dkt. 17 at 20.] In *Ribaudo*, what compelled the Court to remand the case was the ALJ's lack of analysis, not his failure to explicitly reference a Listing. *Ribaudo*, 458 F.3d at 584. Remarkably, Ms. Garcia even cites the portion of the Court's opinion which elucidates this point. [Dkt. 17 at 20.] The standard was reinforced by the Seventh Circuit in *Knox v. Astrue*, where the plaintiff attempted to cite *Ribaudo* for the same proposition that Ms. Garcia proffers here: An ALJ's failure to specifically reference a Listing in making his determination in and of itself compels remand. In rejecting this proposition, the Court held:

> Unlike in *Ribaudo*, Knox did not present any medical evidence supporting the position that his impairments meet or equaled a particular listing. Two state-agency physicians concluded that Knox's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary. In light of the medical evidence, the ALJ's failure to refer to a specific listing at step three is not a ground for remand in this case.

*Knox v. Astrue,* 327 F. App'x 652, 655 (7th Cir. 2009).

**B.  Undeveloped Functional Equivalence Argument**

The second argument Ms. Garcia asserts is that substantial evidence fails to support the ALJ's determination that E.W.D.G. was not functionally disabled due to his mental and physical impairments. [Dkt. 17 at 21.] Specifically, Ms. Garcia challenges the ALJ's finding that E.W.D.G. did not have a marked impairment in the domain of health and physical well-being. [*Id.*] She alleges that the ALJ never considered E.W.D.G.'s "chronic encopresis" in reaching this conclusion. [*Id.*]

Again, Ms. Garcia's argument is comprised of bare assertions, devoid of any cognizable legal analysis. Without so much as a single citation to any evidence to substantiate her claims, Ms. Garcia declares that the ALJ's decision must be reversed "because it fails to build an accu-

rate and logical bridge from all of the evidence in the record to his conclusions." [*Id.*] However uncertain Ms. Garcia may find the ALJ's bridge, even more precarious is her bridge from issue to conclusion. The Court declines to address this undeveloped argument, and finds that Ms. Garcia has waived it by failing to provide any cogent legal analysis.

### C.  Failure to Summon Medical Expert

Ms. Garcia next contends that the ALJ committed reversible error by basing his medical equivalency determination entirely on his own layperson opinion, rather than consulting a medical expert. [Dkt. 17 at 22.] Ms. Garcia asserts that the ALJ's determination was not supported by substantial evidence, but was merely the product of his assumption that E.W.D.G.'s combined impairments were not medically equivalent to any Listing. [*Id.*]

After charging the ALJ with having decided the issue of medical equivalence based entirely on his own layperson opinion, Ms. Garcia curiously attacks the ALJ's determination on the basis that the opinions of the state agency physicians could not reasonably be relied on by the ALJ because they predated other medical evidence in the record. [*Id.*] To support her argument, Ms. Garcia points out that the most recent state agency physician reports relied upon by the ALJ, the Disability and Transmittal Forms provided by Drs. Roush and Horton, were dated March 19, 2010. [*Id.*] Ms. Garcia finds this problematic, as it necessarily precludes the forms from reflecting consideration of additional medical evidence developed subsequent to that date. [*Id.*] Ms. Garcia reinforces her argument by selectively referencing evidence which would have been chronologically impossible for the state agency physicians to have considered while preparing the Disability and Transmittal Forms. [*Id.*] She argues that access to this evidence would have compelled the state agency physicians to conclude that E.W.D.G. was "totally disabled." [Dkt. 17 at 23.]

> An ALJ must obtain a medical opinion from a medical expert:
>
> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 SSR LEXIS 3, *9.  "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, if necessary, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).  Requiring the ALJ to obtain medical testimony reduces the chance that the ALJ will "succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Thus, whether subsequent evidence is sufficiently compelling to warrant opinions from additional medical experts is left to the judgment of the ALJ.

The ALJ's determination here was not based on his uninformed layperson opinion.  In addition to the reports provided by Drs. Roush and Horton, which this Court recognizes as expert opinion evidence, the ALJ also considered both supporting and contrary evidence throughout his discussion.  *See* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants…are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."); *see also* SSR 96-6p (stating that findings of fact made by state agency physicians "must be treated as expert opinion evidence").  Indeed, at multiple points throughout his discussion, the ALJ acknowledges and discusses the medical evidence established after the Disability and Transmittal Forms were finalized.  *See, e.g.,* Dr. Stotsky's report dated June 10, 2010 [R. 321-324; dkt. 12-9 at 9-12]; Dr. Stotsky's report dated Oc-

- 15 -

tober 1, 2010 [R. 325-328; dkt. 12-9 at 13-16]; Riley Hospital intake report from April 19, 2011

[R. 361-367; dkt. 12-9 at 49-55]; and Wishard Hospital medical records dated February 21, 2011

[R. 315-316; dkt. 12-9 at 3-4].

Accordingly, the Court finds that the ALJ properly considered the evidence that devel-

oped subsequent to the date on which the Disability and Transmittal Forms were recorded, and

that substantial evidence supported the ALJ's decision not to seek an updated opinion from a

medical expert.

### D. The ALJ's Credibility Determination

Finally, Ms. Garcia contends that the ALJ's credibility determination was "patently erro-

neous" because it was contrary to the evidence and contrary to the guidelines set forth in SSR

96-7p. [Dkt. 17 at 24.] Specifically, Ms. Garcia alleges that the ALJ failed to properly consider

"[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms," in

assessing the credibility of Ms. Garcia's statements. [*Id.*] As support for this proposition, Ms.

Garcia declares that the ALJ failed to consider E.W.D.G.'s GAF scores of 50 and below. [*Id.*]

The ALJ's credibility determination is typically entitled to special deference. *Scheck v.*

*Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.

2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it

does the opportunity to observe the claimant testifying."). Although the absence of objective ev-

idence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*,

597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting

from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing

arguments based on the record is for the ALJ, not the court," *Donahue v. Barnhart*, 279 F.3d

441, 444 (7th Cir. 2002). "[D]etermining the credibility of the individual's statements, the adju-

dicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Again, Ms. Garcia proceeds by utilizing a combination of conclusory statements and generic references to advance her argument. [Dkt. 17 at 24-27.]  However, contrary to Ms. Garcia's allegations, the ALJ did in fact consider E.W.D.G.'s GAF scores of 50 and below in making his determination. [*See* R. 19; dkt. 12-2 at 20 (noting GAF scores of 40 assigned by Riley Clinic in January 2010 and Riley Hospital in April 2011).]  In addition to those GAF scores, which indicated "some communication problems and major problems in social and school functioning," the ALJ also considered evidence contrary to what the GAF scores suggested. [*Id.*] This evidence included a GAF score of 70 which E.W.D.G. received following an evaluation by Dr. Wooden on August 6, 2009 [R. 200; dkt. 12-7 at 10]; E.W.D.G.'s report card for the 2009-2010 school year, which reflected "mostly A's and exemplary skills in reading and math," [R. 20, 466; dkts. 12-2 at 21, 12-10 at 71]; and his report card for the 2010-2011 school year, which also reflected "superior marks." [R. 20, 478; dkts. 12-2 at 21, 12-10 at 83.]

After considering all of the relevant GAF scores, the ALJ noted that "the multiple GAF scores that were below 60 are inconsistent with an individual who not only performed well in school but also performed above grade average in school." [R. 20; dkt. 12-2 at 21.]  The Court finds the ALJ's discussion of the GAF scores and relevant school records sufficient to withstand Ms. Garcia's claim that his credibility determination was patently erroneous.

Additionally, Ms. Garcia alleges that the ALJ's credibility determination was irrational, and that the ALJ merely supplied a "boilerplate credibility determination." [Dkt. 17 at 24-25.] To support her argument, Ms. Garcia cites the ALJ's credibility determination regarding the cri-

- 17 -

teria contained in factor two of SSR 96-7p and declares that it was an arbitrary rejection.  [*Id.* at 24.]  Curiously, Ms. Garcia omitted the last five words of the ALJ's determination, which read: "…for the reasons explained below."  [R. 16; dkt. 12-2 at 17.]  It appears that Ms. Garcia chose to ignore those words in hopes that this Court would do the same.  [See dkt. 17 at 27 ("The ALJ's failure to cite any evidence in support of his conclusory statements and his apparently intentional vagueness in the credibility determination prevents this Court from having a basis for determining why the ALJ found the claimant's statements to be not credible.  The ALJ's refusal to disclose his reasoning requires reversal of the denial decision").]

A review of the record reveals, however, that the ALJ did in fact support his conclusions with citations to the record and provided sufficient insight into his analysis, such that this Court does indeed have a basis for determining whether substantial evidence supports his conclusions. At various points in his discussion, the ALJ cites evidence in the record which casts doubt on Ms. Garcia's credibility.  The ALJ reviewed clinical records dated November 12, 2008, noting that they "showed claimant was responding well to his medication, and that claimant's therapist suggested that claimant's mother was at fault for the problems they experienced."  [R. 17; dkt. 12-2 at 18 (referring to R. 194; dkt. 12-7 at 4).]  The ALJ also cited Dr. Stotsky's report dated May 14, 2009, which indicated that "claimant was doing much better in school, but does have some trouble going to bed."  [R. 18; dkt. 12-2 at 19 (referring to R. 208; dkt. 12-7 at 18).]  In addition, the ALJ pointed out that approximately one month prior, Ms. Garcia asked Dr. Stotsky for "a letter for claimant's disability claim as she needs financial support for her children."  [*Id.* (referring to R. 205; dkt. 12-7 at 5).]

The ALJ further observed that on October 1, 2010, "records show claimant was making friends, he was getting good grades, except for spelling, and [Dr. Stotsky] even noted that he has

behaved in ways she has not 'seen in him before, which is wonderful to see.'" [R. 19; dkt. 12-2 at 20 (referring to R. 325; dkt. 12-9 at 13).] The ALJ also noted "evidence of family conflict and lack of cohesion," and that during therapy sessions "claimant expressed strife in his family, and slowly began to open up regarding his parental issues." [*Id.* (referring to R. 397, 401; dkt. 12-10 at 2, 6).] Moreover, the ALJ acknowledged that in addition to achieving "advanced" scores during the 2009-2010 school year, E.W.D.G. "behaved without incident from September to February, only when he was taking his medication erratically in August did his behavior problems resurface." [R. 20; dkt. 12-2 at 21 (referring to R. 467, 469; dkt. 12-10 at 72, 74).]

Ms. Garcia appears to have placed greater weight on E.W.D.G.'s GAF scores than the evaluations and reports prepared by his physicians and teachers. Conversely, it is apparent that the ALJ considered the GAF scores below 60 to be outliers, and accordingly assigned them very little weight. The Court finds that the record properly demonstrates that the ALJ's credibility determinations were supported by substantial evidence, and thus must not be disturbed.

## IV.
### CONCLUSION

For the foregoing reasons, the Court finds that the challenges raised by Ms. Garcia on behalf of E.W.D.G. do not warrant remand. Therefore, the Court **AFFIRMS** the Commissioner's denial of benefits. Final judgment will enter accordingly.

06/21/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only</u>:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com